United States District Court
Southern District of Texas

**ENTERED**

January 07, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Marcellaus Hurts, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action H-19-5048 |
| Bobby Lumpkin, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

# Report and Recommendation

Marcellaus Hurts is serving two concurrent thirty-year prison sentences, one for arson and one for aggravated assault-family member. (D.E. 13-14 at 67–68; D.E. 13-16 at 70–71.) Hurts filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Bobby Lumpkin moved for summary judgment. (D.E. 12.) Hurts has also requested that his trial counsel be required to submit an affidavit. (D.E. 3.)

The motion seeking an affidavit is denied. The court recommends that Lumpkin's motion for summary judgment be granted and Hurts's petition be denied with prejudice.

## 1. Facts and Proceedings in State Court

On September 30, 2014, less than a week after being released from prison, Hurts visited his grandmother at her Houston apartment to collect his belongings. (D.E. 13-3 at 2; D.E. 13-14 at 6; D.E. 13-16 at 6.) Hurts's aunt lived there with the grandmother and was present when Hurts visited. (D.E. 13-3 at 2-3.) His grandmother directed him to the room where his belongings were. *Id.* at 2.

Hurts's grandmother checked on him shortly thereafter and observed that Hurts was setting a Bible on fire. (D.E. 13-3 at 3). When

she attempted to stop him, he threw the Bible toward the bed, and the fire was extinguished. *Id.* Hurts then attempted to set fire to his grandmother's clothing. *Id.* She responded by hitting him with her cane. *Id.* Hurts pushed his grandmother to the ground and left the room. *Id.* On his way out of the apartment, Hurts set fire to the curtains. *Id.*

The trial court appointed Robert Scott to represent Hurts and granted Scott's motion for the appointment of an investigator. (D.E. 13-14 at 8, 14.) In a letter addressed to the Harris County District Clerk dated March 10, 2016, Hurts complained that Scott had not visited Hurts in jail and that Scott had lied to Hurts when they did meet every few months for court settings. *Id.* at 80. The case proceeded to trial on both charges on March 14, 2016. A jury convicted Hurts of arson and aggravated assault of a family member and assessed punishment at thirty years for each count to run concurrently. (*Id.* at 67–68; D.E. 13-16 at 71–72.)

On January 12, 2017, Hurts, with the assistance of counsel, appealed both convictions. (D.E. 13-6.) On June 29, 2017, the Court of Appeals for the First District of Texas issued an opinion affirming the trial court's judgment. (D.E. 13-4 at 1–2.) On September 15, 2017, Hurts filed a petition for discretionary review for both convictions, which the Texas Court of Criminal Appeals (TCCA) refused. (D.E. 13-9 at 1; D.E. 13-11; D.E. 13-12.)

On October 29, 2018, Hurts filed separate applications in state court for writs of habeas corpus as to each conviction. (D.E. 13-26 at 5, 24; D.E. 13-29 at 5, 24.) The two applications included identical grounds except for one ineffective assistance of counsel claim for failure to request a jury instruction on a lesser-included offense that Hurts raised only in the aggravated assault application. (D.E. 13-26 at 5–22; D.E. 13-29 at 5–22.)

On February 26, 2019, the district court entered findings of fact and conclusions of law on the aggravated assault habeas application

2

and recommended that it be denied. (D.E. 13-26 at 40.) On May 8, 2019, the TCCA remanded that application for further consideration of Hurts's ineffective assistance of counsel claims for failure to meet with Hurts or discuss trial strategy, failure to adequately investigate,[1] and failure to have Hurts evaluated for competency and sanity. (D.E. 13-23 at 1–2; D.E. 13-24.) The TCCA stated that it had reviewed all other claims and found them "to be without merit." (D.E. 13-23 at 1 n.1.)

On remand, the district court ordered Scott, Hurts's trial counsel, to file an affidavit. (D.E. 13-25 at 7.) The court found Scott's "affidavit to be credible and the facts asserted therein to be true." *Id.* at 24. The court issued amended findings of fact and conclusions of law in which it recommended that the TCCA deny habeas relief on both applications. (D.E. 13-25 at 29.) The TCCA denied Hurts's application on the aggravated assault conviction without written order on the findings of the trial court without a hearing and denied Hurts's application on the arson conviction without written order. (D.E. 13-21; D.E. 13-28.) Although the arson application was not explicitly denied on the findings of the trial court, the claims in the arson application are identical to those in the aggravated assault application and the cases were tried together, so the court infers that the findings on both applications are the same. *See Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (quoting *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)).

Hurts filed his federal habeas corpus petition, claiming ineffective assistance of trial counsel based on: (1) failure to raise the issue of mental health; (2) failure to request a jury instruction on

---

[1] In his state habeas applications, Hurts argued that Scott "failed to conduct an adequate investigation of when the [911] call was made to dispatcher[]." (D.E. 13-26 at 10.) This ground was not raised here. (D.E. 1.)

temporary insanity; (3) failure to request a jury instruction on a lesser-included offense; (4) irreconcilable differences with his trial lawyer; (5) failure to visit Hurts in jail; and (6) allowing Hurts to appear before the jury in prison attire and restraints. (D.E. 1.) On the fourth and sixth of these grounds, Hurts also claims that the trial court abused its discretion by denying him relief.

### 2.  Hurts's Motion Seeking an Affidavit from Trial Counsel

The court denied without prejudice Hurts's motion requesting an affidavit from trial counsel (D.E. 14) and has now reconsidered the request together with Lumpkin's motion for summary judgment. A judge may authorize, upon a finding of good cause, a petitioner to conduct discovery. Rule 6 of the Federal Rules governing Section 2254 cases. The petitioner "must make a prima facie case that discovery is warranted." *Sparks v. Davis*, 756 F. App'x 397, 402 (5th Cir. 2018). The court finds that Hurts has failed to show that, even if the court allowed a second affidavit from trial counsel, Hurts would be able to show that he is entitled to relief. *Cf. id.* (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)) (stating that the petitioner may be allowed to conduct discovery when there is "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."). The court denies Hurts's motion requesting an affidavit from trial counsel.

### 3.  Standard of Review for § 2254 Cases

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford*, 910 F.3d at 235 (quoting *Goodwin*, 132 F.3d at 184). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

### 4. Ineffective assistance of counsel

#### A. Legal standard

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993); *see Shinn v. Kayer*, 141 S.Ct. 517, 522 (2020). If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018); *see Shinn*, 141 S.Ct. at 523 (describing the standard as "highly demanding"). It is "all the more difficult" where a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and[,] when the two apply in tandem,

review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

### i. *Deficient Performance*

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (internal alterations omitted). "A court reviewing those choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal alterations omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal quotation marks omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

### ii. *Prejudice*

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on

the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

## B. Analysis

### i. Failure to raise the issue of mental health

Hurts claims that his "drug abuse and childhood incarceration [resulted in] the inability to function." (D.E. 1 at 6.) He argues that trial counsel failed to investigate his mental health history and, in fact, "su[p]pressed mental health" during the guilt and punishment phases of the trial. *Id.* at 6, 13. He claims that Scott coerced him "to look to be rational and factual understanding [sic] of the proceedings against him." *Id.* at 15. Hurts asserts that a competency hearing and expert witness testimony could have changed the outcome.

Hurts claims that the record lacks an affidavit from Scott explaining the reason he did not explore Hurts's mental health. (D.E. 1 at 13.) Hurts states, "[t]here's nothing in the record to acknowledge [his] ability to consult with [Scott] during tr[ia]l" and "no evidence to prove [Hurts] is not incompetent." *Id.* at 12, 14. He is incorrect. Scott addressed this issue in his affidavit filed in the state habeas proceeding. In his affidavit, Scott affirmed that only a "mention of mental illness" arose during the investigator's witness interviews, which included Hurts's grandmother and aunt. (D.E. 13-25 at 10.) Scott stated that he believed Hurts to be sane and competent, explaining, "[w]hile talking with [Hurts,] I did not find that he could not understand the law or facts surrounding his case or the allegations against him." *Id.* Scott never found Hurts to be mentally impaired or unable to understand the legal and factual explanations that Scott and

the investigator provided. *Id.* Furthermore, "Hurts always indicated that he was of sound mind and did not require any mental health counseling." *Id.*

The state habeas court found that Hurts failed to prove that Scott was ineffective for not obtaining a competency evaluation based on Hurts's mental health history. (D.E. 13-25 at 24.) Additionally, the court found that Hurts failed to prove a reasonable probability that, but for Scott's failure to request a competency assessment, Hurts would have been found incompetent or that the result of the trial would have been different. *Id.* at 25. Based on Scott's affidavit, the trial record, and the legal presumption of competence, the state habeas court concluded that Hurts was competent to stand trial. *Id.*

A person is competent to stand trial when he has the capacity to understand legal proceedings, to consult with counsel, and to assist with his own defense. *United States v. Fields*, 761 F.3d 443, 467 (5th Cir. 2014). "A habeas petitioner may, on collateral review of his state conviction, obtain relief if he can show that the state procedures were inadequate to ensure that he was competent to stand trial." *Mata v. Johnson*, 210 F.3d 324, 329 (5th Cir. 2000). Under Texas law, defendants are "presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Crim. Proc. Code Ann. art. 46B.003(b).

"There can be no deficiency in failing to request a competency hearing when there is no evidence of incompetency." *Gonzales v. Davis*, 924 F.3d 236, 247 (5th Cir. 2019) (quoting *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989)); *see Roberts v. Dretke*, 381 F.3d 491, 499 (5th Cir. 2004) (determining no deficiency in trial performance where there was no evidence that further investigation into competency was necessary). Counsel's performance is not constitutionally deficient for failing to raise a meritless issue. *See Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007).

Hurts has not presented any facts that show he was incompetent to stand trial. To the contrary, he demonstrated understanding of the legal proceedings when presenting to the court his decisions to remain in prison attire for trial, to have the jury decide punishment, and to testify. (D.E. 13-14 at 37; D.E. 13-18 at 4; D.E. 13-17 at 62–81.) Hurts consulted with Scott and the investigator and participated in preparing for trial. (D.E. 13-25 at 10.) Absent evidence of incompetence, Scott's performance was not deficient.

Although the court need not address prejudice where counsel's performance was not deficient, the court finds that the lack of evidence of incompetence precludes the reasonable probability that the result of the proceeding would have been any different had Scott pursued a competency hearing.

The state habeas court's finding that Hurts was not denied effective assistance of counsel for failure to raise the issue of Hurts's mental health is neither contrary to Federal law nor based on an unreasonable determination of the facts.

### ii. Failure to request a jury instruction on temporary insanity

Hurts argues that Scott was ineffective because he failed to request a jury instruction on temporary insanity and failed to inquire about Hurts's "frame of mind at the time he committed the offense." *Id.* at 6, 13, 15. Hurts argues he was entitled to such an instruction because, at the time of the crimes, he was under the influence of a drug called "wet" that, according to Hurts, is known to cause memory loss, uncontrollable rage, and paranoid behavior. *Id.* at 15. The only evidence in the record supporting Hurts's claim is the 911 caller's description of Hurts as "wasted on wet." (D.E. 13-25 at 10.) The remainder of the record cuts against Hurts's allegation.

According to Scott's affidavit, the investigation included discussions with witnesses about Hurts's drug usage, but neither the arresting officers nor Hurts's grandmother or aunt said that they

9

thought Hurts was impaired. *Id.* Scott represented to the judge prior to voir dire that nothing he or the investigator had discovered through their communications with witnesses "benefited, in [Scott's] opinion, any defensive issues that might have been raised in this case." (D.E. 13-18 at 5.) Hurts testified at trial that he had not been drinking and had not taken any drugs on the day of his crimes and that he was not present at the scene of the crimes. (D.E. 13-17 at 66, 72, 78.) In his affidavit, Scott opined that the evidence "did not rise to the level of insanity" and found "no basis for a charge of temporary insanity because we could not raise it to the jury." (D.E. 13-25 at 10.)

In its original findings of fact and conclusions of law, the state habeas court found that Hurts "failed to reach the level of proof required to obtain a jury instruction for the defense of not guilty by reason of insanity." (D.E. 13-26 at 44–45.) In the amended findings of fact and conclusions of law, the state habeas court found, relying on Scott's affidavit, that Hurts failed to prove Scott was ineffective for failing to investigate an insanity defense. (D.E. 13-25 at 25.) The TCCA denied relief based on that finding. Because there was no evidence of insanity, trial counsel was not ineffective for failing to request an instruction on the issue. Also, given that Hurts denied drug use on the stand, requesting an instruction on insanity could have been confusing to the jury and counsel had ample strategic reason not to request such an instruction. Finally, there is no reason to believe that the instruction, if requested, would have been given. As a result, the TCCA's finding on this issue was not unreasonable.

### iii. Failure to request a jury instruction on a lesser-included offense

Hurts argues that Scott should have requested a lesser-included offense instruction in connection with the aggravated assault charge because the evidence showed that his grandmother suffered no injury and needed no medical attention. Although Hurts does not identify

the lesser-included offense on which Scott should have requested an instruction, it appears he is referring to simple assault.

The record reflects that Scott investigated the charges against Hurts with the aid of a court-appointed investigator and that Scott represented to the trial judge that he had contemplated whether the investigation produced facts that benefited Hurts's defense but found none. (D.E. 13-14 at 14, 13-18 at 5.) In his affidavit, Scott affirmed that he fully discussed all the evidence with Hurts and that Hurts understood their conversation and participated in trial preparation. (D.E. 13-25 at 10.)

The district court addressed this issue in its initial findings of fact and conclusions of law, stating that Hurts failed to overcome the presumption that Scott's decision was based on sound trial strategy and failed to show a reasonable probability that, but for Scott's failure to request an instruction on a lesser-included offense, the result of the proceeding would have been different. (D.E. 13-26 at 45.) The TCCA found this ground to be without merit on its first review of the application and later denied relief on the findings of the trial court.

Whether to request a lesser-included offense is a defensive issue that "frequently depend[s] upon trial strategy and tactics." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). When reviewing counsel's strategic choices, the court is required "to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Mejia*, 906 F.3d at 316 (internal alterations omitted). While Hurts argues that pursuing a simple assault instruction may have been a reasonable trial strategy, he fails to point to any support for a finding that not doing so was not a sound choice.

Unlike this court's review of the paper record, Scott interacted with Hurts, the investigator, and the judge and studied the evidence and the law. *See Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. Scott's actions indicate that his decision not to pursue an instruction on simple assault was a considered, strategic decision rather than a

11

mere oversight. Although Scott did not address this issue in an affidavit, the court notes that defense counsel often choose not to pursue lesser-included offense instructions because giving the jury a second option "could increase the chance of conviction on some charge, while foregoing it could lead to a complete acquittal." *Mejia*, 906 F.3d at 316 (internal quotation marks and alterations omitted) (quoting *Adams v. Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006)). The court also notes that Hurts testified at trial that he was not even present at the scene of the arson. The strategy was to demonstrate that he did not commit the crimes at all, not to minimize the seriousness of the crimes committed. Thus, requesting the instruction could have confused the jury and undermined counsel's considered strategy.

Hurts also cannot show prejudice. Hurts was indicted on the charge of aggravated assault for intentionally and knowingly threatening his grandmother "with imminent bodily injury by using and exhibiting a deadly weapon, namely, FIRE." (D.E. 13-16 at 15.) The jury charge explained that "[a] person commits the offense of assault if the person intentionally or knowingly threatens another with imminent bodily injury." (D.E. 13-16 at 54.) *See* Tex. Penal Code § 22.01. Aggravated assault is a second-degree felony that requires additional proof of either serious bodily injury to another or use of a deadly weapon. Tex. Penal Code § 22.02. Hurts started multiple fires in his grandmother's presence. Hurts does not argue that the state failed to prove any element of aggravated assault using fire. Hurts has not shown that giving the lesser included instruction would have changed the outcome of the trial. Because the assault was aggravated by virtue of the use of a deadly weapon, not by virtue of serious bodily injury, the fact that no one was hurt is immaterial.

The state habeas court's finding that Hurts was not denied effective assistance of counsel for failure to request a jury instruction on a lesser-included offense is neither contrary to Federal law nor based on an unreasonable determination of the facts.

### iv.    Irreconcilable differences with his trial lawyer

Hurts argues that irreconcilable differences existed between him and Scott, stating as factual support, that he was "[u]nable to communicate" with Scott, that "no tr[ia]l strategy [was] discussed," and that he wrote a letter to the court complaining about Scott's lack of zeal on his behalf. (D.E. 1 at 7.) Hurts argues that "Scott did not devote full effect to Mr. Hurts" and that Scott's trial strategy was "unreasonable" and led to "incompetent action." *Id.* at 18. Hurts also complains that the trial judge "unreasonably or arbitrarily interfere[d] with [Hurts's] right to choose counsel" by ignoring the letter Hurts submitted to the district clerk complaining that Scott had not visited Hurts in jail and had lied to him. (D.E. 1 at 18, D.E. 13-14 at 80.)

Hurts cites no factual support for his claims, which are belied by the record. The record shows that Scott utilized an investigator to develop the record and met with Hurts every few months. The trial transcript shows that Scott examined witnesses, raised objections, and provided a closing statement. (D.E. 13-17.) Hurts does not say what Scott did or failed to do as a result of their alleged poor relationship.

The district court, in its first findings of fact and conclusions of law, found that Scott moved the court for an investigator and spoke directly with Hurts's mother and that Scott's actions were reasonable and based on sound trial strategy. (D.E. 13-26 at 43, 46.) The district court also found that Hurts did not prove that he had insufficient opportunity to speak to Scott about the case or that Scott conducted an inadequate pretrial investigation. *Id.* at 46. The district court addressed Hurts's letter, stating that the trial court did not abuse its discretion by not responding. *Id.* at 41. This was one of the grounds in Hurts's aggravated assault application that the TCCA found to be meritless and did not remand. (D.E. 13-23 at 1 n.1, 1–2.) Hurts has not rebutted the district court's finding and therefore the TCCA's denial of relief based on those findings was not unreasonable.

13

Moreover, Hurts has not shown prejudice. Hurts has not presented any evidence or reasoning to support that, had his relationship with Scott been more productive, the result of the proceeding would have been different. Hurts does not explain what a different attorney would have done that Scott did not or how those actions would have resulted in a different verdict.

The state habeas court's finding that Hurts was not denied effective assistance of counsel based on irreconcilable differences is neither contrary to Federal law nor based on an unreasonable determination of the facts.

### v. *Failure to visit Hurts in Jail*

Throughout his federal petition, Hurts complains that Scott failed to visit Hurts at the jail. Because Hurts admits that Scott met with him every few months at court hearings, the court interprets the claim to refer only to a failure to meet with Hurts at the jail. Hurts argues that the failure to visit prejudiced Hurts "in several ways[:] (1) other eyewitness[;] (2) tr[ia]l strategy[; and] (3) speedy tr[ia]l (18 months incarcerated)." (D.E. 1 at 15.)

Even assuming Scott did not go to the jail to meet Hurts, there is no dispute that they met. Scott affirmed that he met with Hurts and discussed the evidence as well as Hurts's rights and that Hurts "understood the conversation and participated in preparing for trial." (D.E. 13-25 at 10.) Hurts does not explain how the place of their meeting made any difference.

In its initial findings of fact and conclusions of law, the district court found that Hurts failed to prove that "Scott was ineffective for allegedly failing to visit [Hurts] during his period of incarceration[]" or that Hurts "was harmed by any alleged lack of communication." (D.E. 13-26 at 43, 46.) The court noted that, even if true, Scott "successfully moved the court to order an investigator who spoke with numerous people[]" and that Scott personally spoke with Hurts's mother. (D.E. 13-18 at 5; D.E. 13-26 at 43.) The court found no

14

evidence of a reasonable probability that the result would be different had Scott visited Hurts in jail. (D.E. 13-26 at 43.)

On remand, the district court found that Hurts failed to prove that "Scott was ineffective for allegedly failing to meet with [Hurts] or discuss trial strategy with [Hurts] prior to trial[]" or that "Scott conducted an inadequate pretrial investigation or failed to maintain adequate attorney-client communication." (D.E. 13-25 at 26–27.) The court noted that Scott stated that he fully discussed the evidence and Hurts's rights, that the investigator also spoke with Hurts, and that Hurts participated in preparing for trial. *Id.* Scott's performance was not deficient in this respect.

Hurts also fails to show prejudice. The harm that Hurts asserts is conclusory and not factually supported. Nothing in the record indicates that any eyewitness was not identified. Hurts does not identify any witness that was not interviewed. Hurts's grandmother and aunt, who were both at the apartment at the time of Hurts's crimes, testified. (D.E. 13-17 at 10–41.) Hurts testified. (D.E. 13-17 at 63–81.) Hurts does not explain how more meetings would have altered the trial strategy. He does not explain how more meetings would have brought him to trial faster. On the court's independent review of the record, it can identify no indication of a reasonable probability that, but for Scott's failure to visit Hurts in jail, the result of the proceeding would have been different.

The state habeas court's finding that Hurts was not denied effective assistance of counsel based on the failure to visit Hurts during his period of incarceration is neither contrary to Federal law nor based on an unreasonable determination of the facts.

    vi.   *Allowing Hurts to appear before the jury in prison attire and restraints*

Hurts argues that Scott failed to object to Hurts's appearance at trial in prison attire and restraints. He argues that the trial court erred by allowing him to appear dressed as he was. Hurts complains that the

trial judge and Scott both should have admonished him about the prejudicial effect of wearing jail attire in front of the jury. He argues that the court should have given the jury an instruction about his jail attire. He believes both his lawyer and the court should have arranged for him to have civilian clothes.

The record shows that, prior to voir dire, the trial court confirmed Hurts's choice not to wear civilian attire, stating, "you've had an opportunity to be dressed out and you've elected not to dress out. Is that right, sir?" (D.E. 13-18 at 4.) Hurts responded, "[y]es, sir." *Id.* The court continued by asking Hurts whether he realized that:

> [B]y now not dressing out, . . . additional restraints are being placed on your person because of the fact that the Sheriff's Department . . . has a policy that if you come out into the courtroom in orange there's additional restraints placed on you that would not be placed on you if you were in civilian clothes.

*Id.* Hurts confirmed that he understood. *Id.* At the start of Hurts's trial testimony, Scott addressed Hurts's prison attire and restraints and elicited Hurts's agreement that the orange jumpsuit was provided by the Sheriff's Department and that the handcuffs were required for defendants in orange jumpsuits. (D.E. 13-17 at 64.)

In the original findings of fact and conclusions of law, the district court found that Hurts failed to state facts for which habeas relief could be granted, noting that Hurts made the decision to remain in prison attire, which triggered the restraints policy and that he confirmed that he understood the policy. (D.E. 13-26 at 41.) The district court also found that that the trial court did not abuse its discretion by allowing him to appear in jail attire. (D.E. 13-26 at 41.) This was one of the grounds in Hurts's aggravated assault application that the TCCA found to be meritless and did not remand. (D.E. 13-23 at 1 n.1, 1–2.)

Courts may shackle a defendant "if there is a particular reason to do so." *Deck v. Missouri*, 544 U.S. 622, 627 (2005). Here, the

16

reason was that Hurts's choice of attire triggered the Sheriff's Department's restraint policy. Nothing in the record indicates that Scott advised Hurts not to wear civilian clothes or that Hurts asked Scott's advice on the matter. Scott examined Hurts on the choice in an apparent attempt to mitigate any prejudicial effect. Additionally, nothing in the record shows that the court required Hurts to dress as he did or otherwise abused its discretion in allowing Hurts to do as he wished. To the contrary, the court questioned Hurts to ensure that he was making the choice freely and that he understood, as a result of the decision, he would be required to be in restraints.

Scott's performance in this respect was not deficient. He allowed Hurts to do as he wished and mitigated any prejudicial effect by providing Hurts the opportunity in the presence of the jury to address the decision. The court allowed Hurts to make his own decision and explained the consequence of choosing to wear prison attire.

Hurts also fails to show that he was prejudiced. The evidence against Hurts was overwhelming. Hurts points to nothing in the record that suggests a reasonable probability of a different outcome had he been dressed in civilian clothes. He merely surmises that his appearance in prison attire and restraints decreased his chances of a not-guilty verdict. "Anything is possible. But *Strickland* demands that the chance of a different outcome be 'substantial, not just conceivable,' and on top of that AEDPA demands that the state court's ruling on prejudice be, not merely wrong, but 'objectively unreasonable.'" *Mejia*, 906 F.3d at 321 (internal citations omitted).

The state habeas court's findings are neither contrary to Federal law nor based on an unreasonable determination of the facts. Habeas relief should be denied.

*5. Conclusion*

The court recommends that Lumpkin's motion (D.E. 12) be granted and Hurts's petition be denied with prejudice. Hurts has not

17

met his threshold burden of demonstrating that the state habeas court's denial of his claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Hurts has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on January 7, 2021.

Peter Bray
United States Magistrate Judge

18